UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| PAMELA SMITH, | ] |
| | ] CV-03-CO-1764-W |
| Plaintiff(s), | ] CV-03-CO-1802-W (Carrie Pinson) |
| | ] CV-03-CO-1803-W (Debra Wilder) |
| vs. | ] CV-03-CO-1804-W (Latrese McGrew) |
| | ] CV-03-CO-1805-W (Patrick Montgomery) |
| TARGET, | ] CV-03-CO-1806-W (George King) |
| | ] |
| Defendant(s). | ] |

MEMORANDUM OF OPINION

This litigation was initiated as a single action in which the plaintiffs claimed they were treated differently in their employment due to their race in violation of 42 U.S.C. § 1981.  On July 15, 2003, this Court separated the action into six cases, but consolidated the cases for further proceedings. (Doc. 4.)[1]  The cause is presently before the Court on defendant's motions for summary judgment, filed in CV-03-CO-1764-W, as to the claims of George King (Doc. 36), Carrie Pinson (Doc. 39), Pamela Smith (Doc. 42), Latrese McGrew (Doc. 45), Debra Wilder (Doc. 46), and Patrick Montgomery (Doc. 51).  Target also filed motions to strike the claims for punitive damages,

---

[1]Except as otherwise noted, all court documents are cited to the lead case, CV-03-CO-1764-W.

which are identical for all plaintiffs.  (Docs. 54, 55, 56, 57, 58, 59, 75.)  The plaintiffs filed a motion to strike Target's expert report.  (Doc. 63.)  The motions have been briefed and are ready for submission.

I.    The Summary Judgment Motions.

A.    Summary Judgment Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the

court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

B.      Undisputed Facts Common to All Plaintiffs.

All of the plaintiffs were hired to work at Target's Tuscaloosa store in January of 2002, prior to the March 2002 store opening.  All of the plaintiffs went through orientation. The Tuscaloosa Store Team Leader (STL) during the relevant period was Rex Kamm.  The store organization includes several Executive Team Leaders (ETLs) who report to the STL.  The ETLs supervise department-based Team Leaders (TLs), who possess some supervisory

authority and receive pay level 3.  The TLs supervise pay level one and two

team members (L-1, L-2).  At all relevant times, Bob Rojas was the District

Team Leader (DTL) for Alabama's Target stores, including the Tuscaloosa

store.

C.    The Claims.

All of the plaintiffs are asserting claims under 42 U.S.C. § 1981.  In the

employment context, the elements of a claim of race discrimination under

42 U.S.C. § 1981 are the same as a Title VII disparate treatment claim.  *Rice -

Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000).

A plaintiff can present a case of individual disparate treatment through

direct or circumstantial evidence of discrimination.  *Maynard v. Bd. of

Regents*, 342 F.3d 1281, 1288 (11th Cir. 2003).

1.    Pamela Smith.

Pamela Smith claims Target discharged her on the basis of her race.

(Complaint, CV-03-CO-1764-W, ¶¶ 5-9.)  Smith was hired as a Level Three (L-

3) Team Leader in the stationery and home improvement section of the

Hardlines Department. (Doc. 34, CV-03-CO-1764-W, Part B.)  Jill Johnson,

ETL-Hardlines, hired and supervised Smith.  *Id.*  On March 19, 2002, during

Smith's 90-day probationary period, Smith was discharged on Johnson's recommendation. *Id.*

Smith claims she has direct evidence of discrimination, pointing to her testimony that Johnson told her she was being terminated because she was black and there were too many black employees at the Tuscaloosa Target store. (Doc. 44, Smith Dep., pp. 74-75.) Direct evidence of discrimination is evidence which shows a discriminatory attitude correlating to the discrimination complained of by the employee. *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999)(ADEA case). In other words, it is evidence that shows the employment decision was motivated by discrimination on the part of the decision-maker. *Id.* "Only the most blatant remarks, whose intent could be nothing other than to discriminate . . . , will constitute direct evidence of discrimination." *Id.*, citing *Earley v. Champion Int'l. Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990). Moreover, such remarks must be made by the decision-maker and must be related to the adverse employment decision at issue. *Minton v. American Bankers Ins. Group*, 2003 WL 21303330 (11th Cir. Feb. 6, 2003); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989)(O'Connor, J.,

concurring).  Smith's testimony meets this standard, and qualifies as direct evidence of discrimination.[2]

Nonetheless, Target argues Smith's testimony must be disregarded because it is inconsistent with a previous sworn statement Smith made in an attempt to obtain unemployment compensation.  "When [in sworn testimony] a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  *Van T. Junkins and Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).  The principle applied in *Van T. Junkins* is inappropriate here, since Smith's statement to the Alabama Department of Industrial Relations and her deposition testimony are not necessarily contradictory.  Therefore, the deposition testimony will not be excluded.  The defendant will be able to use the inconsistency to impeach the plaintiff at trial, but in the present proceedings, the deposition

---

[2]Target also argues Smith cannot establish a prima facie case using the *McDonnell-Douglas* circumstantial evidence test, and cannot show that its proffered reasons for her termination are pretextual.  In view of the plaintiff's presentation of direct evidence of discrimination, the Court will not address this alternative argument.

testimony creates a triable issue of fact as to defendant's motive in terminating the plaintiff.

Target also argues it is entitled to summary judgment on Smith's claims because it has shown it would have made the same decision absent any discriminatory intent.  Although the Civil Rights Act of 1991 limited the impact of the mixed-motive defense articulated in *Price-Waterhouse* in the context of Title VII actions, the limitation does not affect Section 1981 claims.  *Mabra v. United Food and Commercial Workers Local Union No. 1996*, 176 F.3d 1357 (11th Cir. 1999); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989) (holding that an employer may avoid liability by producing evidence showing "that its legitimate reason, standing alone, would have induced it to make the same decision").  Therefore, under 42 U.S.C. § 1981, if a plaintiff presents direct evidence that discrimination was a motivating factor in the employment decision, the employer may, nevertheless, avoid liability by proving that the same employment decision would have been made in the absence of the alleged discrimination.  *Steger v. General Elec. Co.*, 318 F.3d 1066, 1075 (11th Cir. 2003).  A fact-finder's conclusion that the employer would have made the same decision is sufficiently supported by

evidence that articulates a specific reason and is factually specific. *Steger*, 318 F.3d at 1076-77.

In support of its argument that it can show Smith would have been fired absent any discriminatory motive, Target points to evidence that Johnson had repeatedly counseled Smith regarding her speed, prioritization of tasks, retention of information, failure to take charge of her department, and attendance. However, because Smith presented direct evidence of discrimination, Target cannot satisfy its burden merely by presenting evidence which creates an issue of fact regarding its real reason for the termination. *Steger*, 318 F.3d at 1075. Rather, it must show by a preponderance of evidence that it would have made the same decision absent discrimination. *Id.* The evidence that Johnson, who terminated Smith and allegedly made discriminatory remarks in that context, found fault with Smith prior to the termination, is insufficient to meet this higher burden.

Accordingly, Target's motion for summary judgment will be denied as to Pamela Smith's claims.

        2.    Carrie Pinson.

Carrie Pinson claims Target discharged her on the basis of her race. (Doc. 2, CV-03-CO-1802-W, ¶¶ 10-13.)  Pinson was hired as a Level One (L-1) Sales Floor Team Member in the Softlines Department.  (Doc. 8, CV-03-CO-1802-W, Part B.)  After the store opened on March 10, 2002, she became a salesperson in the toys department and Thad Pate was her team leader.  *Id.* On March 21, 2002, she submitted the following letter to ETL Kathy Nall:

> I Carrie Pinson wish to resign my position with this company.
> I feel I am not being treated in a fair and professional manner, no matter how hard I tried nothing never [sic] right.
> My final decision was base [sic] on what the executive Jill told me, when we were discussing my schedule about working all nights, which I was told would be rotated.  She told me "we have to like you and you have to like us."
> This is not professional.

*Id.*  Pinson claims Target unlawfully discharged her because of her race in violation of 42 U.S.C. § 1981.  (Doc. 8, Part C.)  Pinson identifies Jill Johnson as her "decision-maker" and points to Pamela Smith's testimony that, in addition to the remarks Johnson allegedly made to Smith at Smith's termination, Johnson previously told Smith to harass Pinson but Smith refused.  Pinson also testified Johnson told her that her hair was too ethnic.

It is undisputed that Pinson submitted her resignation letter to Nall and was subsequently removed from the work schedule.  There is no evidence to

support Pinson's claim that Johnson was involved in the decision to remove Pinson from the schedule.   Direct evidence is evidence that shows the employment decision was motivated by discrimination on the part of the decision-maker. *Damon*, 196 F.3d at 1358.  The discriminatory remarks must be made by the decision-maker and must be related to the adverse employment decision at issue. *Minton*, 2003 WL 21303330, *1 (11th Cir. Feb. 6, 2003); *Price Waterhouse*,  490 U.S. at 277 (O'Connor, J., concurring). Because there is no evidence that Johnson was involved in the decision to remove Pinson from the schedule, Johnson's remarks are not direct evidence of discrimination.

In response to Target's claim that she cannot prove her case of race discrimination with circumstantial evidence, Pinson contends her letter to Nall was a "discrimination complaint" and that her testimony coupled with the testimony of Smith, Wilder and Montgomery raises questions of fact about her treatment by Johnson.  No reasonable jury could conclude that the letter would put Nall, the decision-maker, on notice that Pinson was complaining of race discrimination by Johnson.  At most, Pinson complained to Nall that Johnson did not like her; she made no mention of racial bias.

Absent direct evidence of discrimination, a plaintiff may establish a circumstantial prima facie case of racial discrimination based on disparate treatment by showing: (1) she is in a protected class;  (2) she was qualified to perform her job; (3) an adverse employment action; and (4) some evidence creating an inference of race discrimination.  *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003).  Pinson cannot establish an adverse employment action because her letter to Nall was clearly and unequivocally a resignation letter.[3]  Further, Pinson has not presented any evidence that Nall's removing her from the work schedule was based on race discrimination. There is no evidence Pinson was replaced by someone outside the protected class, that a similarly situated white employee who submitted a similar letter was retained on the work schedule, or any other evidence creating an inference of race discrimination with respect to Nall's actions.

Accordingly, Target's motion for summary judgment will be granted as to Pinson's claims.

> 3.    Debra Wilder.

---

[3]Pinson has not claimed or shown she was constructively discharged.

Debra Wilder also claims Target discharged her on the basis of her race. (Doc. 2, CV-03-CO-1803-W, ¶¶ 14-17.)  Wilder was hired as a Level Two (L-2) Cashier Specialist.  (Doc. 8, CV-03-CO-1803-W, Part B.)  On January 17, 2002, STL Kamm and ETL Nall met with Wilder at the Trussville store to discuss events that had occurred during Wilder's training in the Huntsville store.  *Id.*  At the conclusion of the meeting, Kamm and Nall advised Wilder she was being discharged that day.  *Id.*

Target argues that Wilder cannot establish a prima facie case of discrimination because she cannot show she was treated less favorably than any similarly-situated employee outside her protected class.  In support of this argument, Target points to the statement of Kip Reaves, an ETL in Hardlines at the Huntsville Target store.[4]  (Doc. 49, Reaves Decl.)  Reaves stated that, on January 16, 2002, he was instructed to return clearance merchandise to the sales floor that he was told had been set aside by Wilder, and Wilder yelled at him when she found him returning the merchandise.  *Id.*

---

[4]As Target points out, a common method of establishing the fourth prong of the prima facie case is to present evidence that the employer replaced the plaintiff with someone outside of the protected class.  *Walker v. Nationsbank of Florida*, 53 F.3d 1548, 1556 (11th Cir. 1995).  Alternatively, a plaintiff can demonstrate that a similarly-situated employee outside of the protected class was treated more favorably.  *Knight*, 330 F.3d at 1316.

He further stated that he explained to Wilder it was against company policy to hold clearance merchandise.   Finally, he stated that he never intentionally allowed any store employee to set aside clearance merchandise in violation of the company policy.  *Id.*  In response, Wilder points to her testimony that her white trainer and another employee also set aside clearance merchandise and told her that setting aside clearance merchandise was acceptable.  (Doc. 50, Wilder Dep., pp. 98-100.)  However, Wilder testified she didn't know if anyone spoke to the trainer about hiding clearance merchandise.  *Id.*  Further, she did not testify that anyone in Target management knew about the other employees' perfidy.  *Id.* Therefore, there is no evidence these employees were similarly situated, and no evidence they were treated differently than Wilder.

Wilder also argues Jill Johnson was negatively involved in her termination, pointing to her testimony that, after she was terminated and had gone outside, she heard "Jill" say to Kathy, "All blacks steal." (Doc. 50, Wilder Dep., pp. 80-82.) However, there is no evidence that "Jill" had input into the decision to terminate Wilder.  Wilder testified that "Jill" was not her supervisor and she didn't know if "Jill" was involved in her termination.

*Id.* She testified that Russ, Rex and Kathy met with her and terminated her. Id. Although Kathy and Rex went outside to discuss something during the meeting at which Wilder was terminated, there is no evidence Jill was outside at that time. Because "Jill's" comment was not made by a decision-maker or made in connection with Wilder's termination, it is not direct evidence of discrimination.

Because Wilder has not presented a prima facie case of discrimination by either direct or circumstantial evidence, Target's motion for summary judgment will be granted as to Wilder's claims.

4.    George King.

George King claims Target disciplined him, failed to promote him and reduced his hours on the basis of race. (Doc. 2, CV-03-CO-1806-W, ¶¶ 26-32.)[5]  King was hired as a Level One (L-1) Flow Team, or Overnight Team,

---

[5]In the Joint Status Report, King claimed he was moved from the Plan-o-gram Team back to the Flow Team for discriminatory reasons. Although Target did not argue for summary judgment as to the claim, King reiterated this claim in his response to summary judgment.   Although King asserted in his complaint that he was subjected to discriminatory discipline, discriminatory promotion decisions, and reduced hours, he did not make any claim about a discriminatory transfer until the Joint Status Report. (Doc. 2, ¶¶ 26-32.)  The Court does not provide for the addition of new claims in the Joint Status Report. See Scheduling Order, Doc. 11, CV-03-CO-1764-W (providing deadline for addition of claims several months prior to submission of the joint status report). King has never moved to amend his complaint and this claim is not before the Court.

Member.  (Doc. 8, CV-03-CO-1806-W, Part B.)  His duties included unloading freight and restocking shelves and his initial pay rate was $6.50 per hour, with a one-dollar differential for working the overnight shift.  *Id.*  In April 2002, at his request, King was assigned to work on the Plan-o-gram Team.  *Id.*  In June 2002, he was returned to the Flow Team.  *Id.*  He claims he was removed from the Plan-o-gram Team and his hours were reduced for several weeks after he returned to the Flow Team for discriminatory reasons.  (Doc. 8, Part C.)

In August 2002, King and white employee Michael Smith were issued Final Warnings after an altercation.  (Doc. 8, Part B.)  When King complained to ETL Connie Culpepper-Herman, the final warnings were withdrawn from his and Smith's files.  *Id.*   King claims the discipline was racially discriminatory.  (Doc. 8, Part C.)

In March 2002, Ms. Kate Goshorn (W) was promoted to Plan-o-gram Team Leader.  (Doc. 8, Part B.)  In July 2002, Todd Thompson (B) was promoted to L-2 Signing Specialist.  *Id.*  In November 2003, Mary Burke (W) was hired as an L-3 Flow Team Leader.  *Id.*  King claims he was denied promotion to these positions because of his race.  (Doc. 8, Part C.)

Target argues it is entitled to summary judgment as to King's claim of discriminatory discipline because the August 2002 "final warning" was removed from his file and did not negatively affect his employment, so that it cannot be considered an adverse employment action.[6]   Alternatively, Target argues King cannot show he was treated differently than any similarly situated employee.  King disputes Target's claim that there were no adverse consequences of the warning, pointing to his September 2002 reduction in hours.  However, he has not responded to Target's second argument and has not pointed to any evidence that he was treated differently than white employees involved in altercations.   Accordingly, Target's motion for summary judgment will be granted as to King's discriminatory discipline claim.

Target also argues it is entitled to summary judgment as to King's promotion claims because he never applied for any promotion, he cannot show he was equally or more qualified than the selected candidates, and he

---

[6]*See Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003)(A withdrawn reprimand, which has yielded no adverse consequences, is not a "working condition");  *Davis v. Town of Lake Park*, 245 F.3d 1232, 1240 (11th Cir. 2001)(two job performance memos placed in employee's file did not constitute adverse employment action because employee did not suffer any tangible consequence from this memo in the form of a loss of pay or benefits or further discipline).

cannot show that Target's reasons for its selections were a pretext for discrimination.[7]  For all three promotions, Target points to evidence that it chose the candidate it believed was best qualified for the job.  (Doc. 37, Boulter and Kamm Decl.)  In his response, King has not pointed to any evidence of pretext or otherwise showing the promotions were denied him for discriminatory reasons.  (Doc. 66, pp. 20-22.)  Accordingly, Target's motion for summary judgment will be granted as to King's promotion claims.

Pointing to the declaration of Steven Lawler, Target argues King's hours were reduced in the fall of 2002 due to performance issues such as poor productivity and attendance, and that white employee Kim James suffered a similar reduction in hours for the same reason.  *Id.*, Lawler Decl. Doc. 37.  Target argues King cannot establish a prima facie case because he cannot point to any similarly situated white employee who was treated more favorably.  In response, King argues that Target's stated reason for reducing his hours is inconsistent with  his April 2002 and January 2003 performance appraisals and is inconsistent with the claim that he was put back on the

---

[7] If a plaintiff establishes a prima facie case, then the employer must present evidence of a legitimate, nondiscriminatory reason for its decision.  *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253 (11th Cir. 2000).  To ultimately prevail, the plaintiff must show the employers articulated reason was false and that the real reason was the plaintiff's race.  *Id., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 519 (1993).

Flow Team because of his experience.  King has not, however, pointed to any similarly situated white employee who was treated more favorably in these circumstances nor has he presented any other evidence that Target's actions were racially motivated.[8]  His argument that Target's stated reasons for the reduction in hours are pretextual is unavailing without prima facie evidence of disparate treatment.  Therefore, Target's motion for summary judgment will be granted as to King's claim that his hours were reduced for discriminatory reasons.

Accordingly, Target's motion for summary judgment will be granted as to King's claims.

> ### 5.    Latrese McGrew.

Latrese McGrew claims Target denied her promotions on the basis of race.  (Doc. 2, CV-03-CO-1804-W, ¶¶ 18-21.)  McGrew was hired as a Level Two (L-2) Shoe Specialist Team Member in the Softlines Department.  (Doc. 8, CV-03-CO-1804-W, Part B.)  On August 18, 2002, McGrew's supervisor, ETL Connie Culpepper-Herman, temporarily promoted McGrew to a Sales Floor

---

[8]In brief, King argued "white employees" who were hired after him continued to get 40 hours per week.  However, he has not pointed to any evidence in support of this argument and has not shown these employees were similarly situated in all relevant respects.

Team Leader job to replace an employee who had taken leave. *Id*. McGrew returned to her Team Member job on October 6, 2002. *Id*.

In October 2002, Patricia Grimball (W), was promoted to an L-3 Sales Floor Team Leader job. *Id*. From November 2002 to February 2, 2003, Culpepper-Herman temporarily promoted Edith Herring (W) to a Sales Floor Team Leader job. *Id*. On January 2, 2002, Melissa Holt (W) was hired as an L-3 Team Leader - Starbucks. *Id*. McGrew has never bid on a job opening. *Id*. McGrew claims she was not promoted to the L-3 team leader jobs given to Grimball, Herring, and Holt because of her race. (Doc. 8, Part C.) Target argues McGrew cannot establish a prima facie case of discrimination and she cannot show its proffered reasons for the decisions are a pretext for discrimination.

First, Target argues McGrew did not apply for any of the promotions. McGrew contends she did not apply for the promotions because they weren't posted, pointing to her testimony that jobs were posted near the break room, she always checked, and she did not see a Level III job posting. (Doc. 47, McGrew Dep., pp. 36-37.) Although Target presented evidence that many employees were interviewed for the promotion Grimball received and

Grimball said she responded to a job announcement, McGrew's testimony creates a question of fact regarding whether the promotions were not posted or posted in the usual manner.  *Compare Cardenas v. AT&T Corp.*, 245 F.3d 994, 999 n.3 (8th Cir. 2001)(plaintiff's testimony that he did not see posting did not create a question of fact when plaintiff only looked for postings five times during his tenure as employee).[9]  An employee may be excused from the application requirement of the prima facie case if he can establish that the company had some reason or duty to consider him for the post.  *Walker v. Prudential Property and Casualty Ins. Co.*, 286 F.3d 1270, 1276 (11th Cir. 2002).   When an employer uses informal methods to provide notice of available positions, it has a duty to consider all those who might reasonably be interested.  *Id.* at 1275, *citing Carmichael v. Birmingham Saw Works*, 738 F.3d 1126, 1133 (11th Cir. 1984).  Several questions of fact prevent summary judgment for Target on this issue.

Target alternatively argues that McGrew cannot show she was minimally qualified for the positions.  McGrew argues she was more qualified

---

[9]There is no evidence that the positions given to Herring or Holt were posted. There is some affirmative evidence that the Holt position was not posted.  (Doc. 46, Hoydich Decl.)

than Grimball and Herring because they had no college degree or retail experience, while she had graduated from college and worked at K-Mart for 3 years.   (Doc. 47, McGrew Dep., pp. 13-16, 49-50.)   Target has not presented any evidence showing the minimal qualifications for Team Leader candidates, merely arguing that McGrew was unqualified because she had not successfully performed as a temporary team leader.   ETL Connie Culpepper-Herman, McGrew's supervisor, stated that all Target employees who applied were interviewed.   Her statement indicates that the minimal qualification for the position was status as a Target employee, and McGrew certainly met that minimal requirement.   Regardless, Target has not met its burden of showing it is entitled to summary judgment because McGrew did not meet the minimal qualifications for the promotions.

Target also argues McGrew cannot show she is equally or more qualified than the persons it chose for the Team Leader positions in question.   In *Walker v. Mortham*, a panel of the Eleventh Circuit, while recognizing conflicting circuit precedents on the issue, nevertheless concluded that a plaintiff need not establish as part of her prima facie case that the successful

applicant for her coveted position was less than or equally qualified. *Id.*, 158 F.3d 1177 (11th Cir. 1998).

Although McGrew satisfied the minimal requirements of presenting a prima facie case, McGrew has not presented any evidence tending to show that Target's proffered reasons for its hiring decisions are pretextual.[10] Target presented evidence that Grimball was chosen because "she had a stronger interview than other candidates, based on her ability to express her goals, she demonstrated leadership and organizational skills, she demonstrated good job performance with no speed, accuracy or attendance issues, and she demonstrated an ability to develop other quality Team Leaders." (Doc. 46, Nall Decl. ¶ 2; Boulter Decl. ¶ 11.)  McGrew argues the reasons proffered for Grimball's promotion are pretextual because the reasons are subjective, the same reasons were stated by Nall and Boulter,

---

[10]Target pointed to Culpepper-Herman's statement that she wanted to provide Herring with the same opportunity to work as a temporary Team Leader that she had provided for McGrew.  (Doc. 46, Culpepper-Herman Decl. ¶ 9.)  Target showed that Holt was a Team Leader who was rehired into her same Team Leader position only a few days after she resigned to take another job.  She was rehired because she had demonstrated excellent abilities and always had an organized and well-run work area.  (Doc. 46, Hoydich Decl. ¶ 1.)  McGrew responded to Target's proffer of non-discriminatory reasons for the decisions only with respect to the Grimball promotion, and Target's motion for summary judgment as to the Herring and Holt promotions will be granted without further discussion.

and they did not interview McGrew.  As long as the defendant's explanation of its legitimate reasons is clear and reasonably specific, subjective reasons for the decision are as acceptable as objective reasons.  *Chapman v. A-1 Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000).  The evidence that Nall and Boulter had identical reasons for selecting Grimball does not tend to show their reasons were false or otherwise a pretext for discrimination; since Nall and Boulter were two members of a three person team that selected Grimball, the similarity of their reasons facially seems to evidence their agreement.  McGrew has not explained why she thinks this similarity is suspicious, and the Court does not see how the congruence raises a suspicion of pretext in this context.

Finally, as to the stated reason that Grimball was the strongest candidate interviewed, McGrew's response that she was not interviewed does not tend to show that Target's employment decision was discriminatory.  Once the defendant proffers evidence of a legitimate, non-discriminatory reason for its decision, any presumption of discrimination raised by the prima facie case drops from the case and the plaintiff is left with the ultimate burden of proving she was the victim of discrimination.

There is no evidence that McGrew was deliberately excluded from the interview process for discriminatory reasons.  Rather, the evidence at best shows there was no posting of the position.

McGrew has not presented any evidence showing that the proffered reasons for the selection of Grimball were pretextual, that she was deliberately excluded from the selection process for discriminatory reasons, or any other evidence tending to show she was the victim of intentional discrimination.

Accordingly, Target's motion for summary judgment will be granted as to McGrew's claims.

### 6.   Patrick Montgomery.

Patrick Montgomery claims Target denied him promotions on the basis of race.  (Doc. 2, CV-03-CO-1805-W.)[11]  Montgomery was hired as a Level Three (L-3) Sales Floor Team Leader in the home decor section of the

---

[11]In the Joint Status Report, Montgomery also claimed he was treated less favorably than similarly situated white employees, with regard to assignment, training, staff and equipment.  (Doc. 4, CV-03-CO-1805-W.)  He did not include this claim in his complaint.  (Doc. 2, CV-03-CO-1805-W, ¶¶ 22-25.)  The parties did not address this claim in the summary judgment motions.  The Court does not provide for the addition of new claims in the Joint Status Report. See Scheduling Order, Doc. 11, CV-03-CO-1764-W, (providing deadline for addition of claims several months prior to submission of the joint status report).  Montgomery has never moved to amend his complaint and this claim is not before the Court.

Hardlines Department.   (Doc. 8, CV-03-CO-1805-W, Part B.)   In either December 2002 or January 2003, Montgomery interviewed for the job of ETL-Asset Protection.  *Id.*  He completed a selection process and, beginning on January 5, 2003, attended Target Business College.  *Id.*  He was promoted to the job of ETL-Asset Protection effective February 16, 2003.  *Id.*  On March 2, 2003, Montgomery transferred to the Marietta, Georgia, store as ETL-Asset Protection.  *Id.*

On November 30, 2002, Nancy James (W), an ETL-Softlines at the Trussville store was transferred to the ETL-Hardlines at the Tuscaloosa store to replace ETL-Hardlines Jill Johnson.  *Id.*  On April 6, 2003, Dana Bailey (W) ETL-Team Relations at the Trussville store laterally transferred to the Tuscaloosa store to replace ETL-Softlines Culpepper-Herman.   *Id.* Montgomery claims he was denied the positions in hardlines and softlines because of his race.  (Doc. 2, CV-03-CO-1805-W.)[12]

---

[12]Montgomery testified that James replaced Culpepper-Herman as the ETL-Softlines and Lawler replaced Johnson as the ETL-Hardlines.  (Doc. 53, Montgomery Dep., pp. 137-39.)   In brief, Montgomery reiterated this argument, pointing to his testimony as evidentiary support.  However, as discussed above, the parties agreed in the Joint Status Report that James replaced Johnson as the ETL-Hardlines and Bailey replaced Culpepper-Herman as the ETL-Softlines.  (Doc. 8, CV-03-CO-1805-W, Part B); (Doc. 11, CV-03-CO-1764-W, ¶ 7) (providing that joint status report must include all undisputed material facts, and that report will be used in summary judgment proceedings and will be incorporated in substantially unchanged form into the pretrial order).  Regardless of who

Target contends it is entitled to summary judgment as to Montgomery's claims because he cannot establish a prima-facie case and cannot show that the reasons proffered for Target's decision are a pretext for discrimination.

As to the November 30, 2002, vacancy in the ETL-Hardlines position, Target argues that Montgomery cannot establish a prima facie case because he cannot show he was minimally qualified for the job.[13]  In support of this argument, Target points to the affidavit Monica Hall, the Regional Human Resources Director responsible for all Alabama Target stores, who stated that ETLs are chosen from a pool of Target employees who have completed a day-long "Round Robin" series of interviews with District Team Leaders and Store Team Leaders, that the process occurs every six months unless store circumstances otherwise require, and that Montgomery did not complete his interviews until December 2002.  (Doc. 52, Hall Decl.)  Montgomery has not

---

ultimately got the positions, it is clear that Montgomery is claiming he should have gotten the ETL-Hardlines position vacated by Johnson or the ETL-Softlines position vacated by Culpepper-Herman.

[13]Target also argues Montgomery cannot show he is equally or more qualified than the persons it chose for the position.  As discussed above, a plaintiff is not required to show that the successful applicant was less than or equally qualified as part of the prima facie case.  *Walker v. Mortham*, 158 F.3d 1177 (11th Cir. 1998).

responded specifically to this argument, merely stating that he has a college degree and has made a prima facie case.  (Doc. 66, pp. 22-24.)  Since Montgomery has not presented any evidence that he was qualified for the ETL job in November 2002, Target's motion for summary judgment will be granted as to the November 2002 ETL-Hardlines position.[14]

As to the second position, ETL-Softlines, Montgomery testified that, in the summer of 2002, he talked to Culpepper-Herman about getting her ETL-Softlines position when she transferred to another store.   (Doc. 53, Montgomery Dep., pp. 135-38.)  He did not speak to anyone else about the position.  *Id.*  Culpepper-Herman stated she remained in the ETL-Softlines position until March 3, 2003.  (Doc. 52, Culpepper-Herman Decl.)  The parties agreed that Dana Bailey became the ETL–Softlines in April 2003.  (Doc. 8, Part B, ¶ 13.)

---

[14]Alternatively, Target argues that Montgomery cannot show that its reasons for laterally transferring James in November 2002 were a pretext for discrimination.  In support of this argument, Target points to the statement of Bob Rojas, District Manager for the Alabama Target stores, who stated that he chose to laterally transfer James from the Trussville store to the Tuscaloosa store because she had been recruited at the University of Alabama through Target's on-campus recruiting process and had worked as an intern at Target prior to her graduation, she had successfully completed the interview process and was already working as an ETL, and she was familiar with the Tuscaloosa area.  (Doc. 52, Rojas Decl.)  Montgomery did not respond to this argument, and apparently conceded that the reasons were not pretextual.  (Doc. 66, pp. 22-24.)

Pointing to the declaration of Monica Hall, Target argues that Montgomery had already received his promotion to ETL-Asset Management and transferred to Marietta, Georgia, when the position came open. (Doc. 52, Hall Decl.) In response, Montgomery appears to confuse the two ETL positions, but clearly argues that the incumbents in both positions left in the fall of 2002. In support of his argument, he points to the declarations of Culpepper-Herman and Johnson. (Doc. 66, p. 23.) ("Culpepper and Johnson both provide in their declarations that they either resigned or changed jobs in October, 2002"). However, Culpepper-Herman stated in her declaration that she did not vacate the ETL-Softlines position until March 2003. (Doc. 52, Decl. of Culpepper-Herman.) ("From December 2001 to March 3, 2003, I was the Executive Team Leader (ETL) - Softlines at the store in Tuscaloosa, Alabama. From October 2002 to March 2003, I was **also** ETL-Team Relations at the same store.")(emphasis added). Other than his misplaced reliance on Culpepper-Herman's declaration, Montgomery offers no evidence in support of his claim that Culpepper-Herman's position was vacated in October of 2002, while he was still at the Alabama store.

Although there is no issue of material fact regarding the date that the ETL-Softlines position opened, it is unclear how this fact entitles Target to summary judgment.  Although, Target says, '[n]otwithstanding the obvious fact that plaintiff's recent promotion and relocation out-of-state would effectively remove him from consideration for the ETL-Softlines job at the Tuscaloosa store . . . ," there is no attempt to show evidence about the procedure Target used to choose ETLs after they completed the Round Robin process.  There is no evidence in this motion about how potential openings were announced, whether the pool of candidates was comprised only of qualified persons in a particular geographic area, or otherwise how the transfer to Georgia might have excluded Montgomery from consideration.

Target also argues it is entitled to judgment because the ETL-Softlines position would have been a lateral transfer for Montgomery in March of 2003.  Montgomery points to his testimony that the sales floor ETL position pays more than the asset protection position.  (Doc. 53,  Montgomery Dep.,  pp. 143-44.)  When a job assignment affects salary, it is considered an adverse employment action.  *Gillis v. Georgia Dept. of Corrections*, 400 F.3d 883, 888 (11th Cir. 2005).

Finally, Target argues that it had non-discriminatory reasons for choosing Bailey for the ETL-Softlines position in April 2003, which Montgomery cannot show are pretextual.[15] Target points to the statement of Bob Rojas, District Manager for the Alabama stores during the pertinent period, that he chose to transfer Bailey into the position in Tuscaloosa because she already had successful ETL experience at the Trussville store and she was familiar with Tuscaloosa because she had gone to school there. (Doc. 52, Rojas Decl.) Montgomery has not pointed to any evidence showing the decision was, in fact, based on race. (Doc. 66, pp. 22 - 24.)

In his brief in response to summary judgment, Montgomery asserted a retaliation claim. (Doc. 66, p. 23.) This argument will not be considered. *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312 (11th Cir. 2004)(a non-

---

[15]As discussed above, Montgomery concedes that Bailey got the ETL-Softlines job in April 2003, and he presented no evidence that the job was open at any time prior to that date. His testimony that Lawler got either the Softlines or Hardlines ETL job in the fall of 2002 is contradictory to all the other evidence, and is contradicted by the factual admissions he made in the Joint Status Report and in his response to the defendant's proposed statement of facts on summary judgment. (Docs. 52, 67.) A reasonable jury could not find that Lawler got one of the coveted positions in the fall of 2002 based only on Montgomery's testimony in light of the overwhelming evidence to the contrary. Montgomery's testimony does not create a substantial, material question of fact on this issue.

moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion).

Accordingly, Target's motion for summary judgment will be granted as to Patrick Montgomery's claims.

II.    Target's Motions to Strike the Punitive Damages Claims.

Target contends the claims for punitive damages fail, because the plaintiffs cannot demonstrate that anyone with "managerial capacity," as that term has been defined, discriminated against them.  The motions are moot as to plaintiffs Wilder, Montgomery, Pinson, King, and McGrew.  (Docs. 54 - 57, 59.)  The motion will be granted as to plaintiff Smith.  (Doc. 58.)

For the issue of punitive damages to reach the jury in a Section 1981 case, the plaintiff must come forward with substantial evidence that the employer acted with actual malice or reckless indifference to his federally protected rights. *Miller v. Kenworth of Dothan*, 277 F.3d 1269, 1280 (11th Cir. 2002), citing *Kolstad v. Am. Dental Ass'n.*, 527 U.S. 526 (1999).  Malice or reckless indifference is established by a showing that the employer discriminated in the face of the knowledge that his actions would violate federal law. *Id.*  Constructive knowledge is insufficient. *Id., citing Dudley*

*v. Wal-Mart Stores Inc.*, 166 F.3d 1317, 1323 (11th Cir. 1999).  Therefore, to get punitive damages a plaintiff must show either that the discriminating employee was high up the corporate hierarchy or that higher management countenanced or approved the discriminating behavior. *Id.*

Smith contends Target can be found vicariously liable for punitive damages in this case because there is no evidence that Target enforced its anti-discrimination policy, *citing Kolstad*, 527 U.S. at 545 (concluding that an employer may not be held vicariously liable for punitive damages when the discriminatory employment decisions of its managerial agents are contrary to the employer's good-faith efforts to comply with Title VII). Evidence that the employment decisions of managerial agents are contrary to the employer's good faith efforts to comply with Title VII is a good faith defense to liability for punitive damages.  *Kenworth*, 277 F.3d at 1280. However the availability of this defense does not negate the plaintiff's burden of establishing actual knowledge on the part of the employer by showing that the discriminating employee was high up in corporate management or that higher management countenanced or approved the behavior.  *Id.*  In *Dudley v. Wal-mart*, the 11th Circuit said a store manager

was not sufficiently high in the corporate hierarchy of retail giant Wal-Mart to justify imposing punitive damages on Wal-Mart for the manager's discriminatory employment decision. *Id.* 166 F.3d at 1323. Here, Smith has presented evidence tending to show that Jill Johnson, her immediate supervisor, terminated her for discriminatory reasons. There is no evidence that anyone in Target's corporate hierarchy was aware of Johnson's motivation. Therefore, Smith's claim for punitive damages will be dismissed.

III.   Plaintiffs' Motion to Strike Target's Expert Report.

Finally, the Court has for consideration Plaintiffs' motion to strike Target's expert report. (Doc. 63.) Because the expert report was not considered in these summary judgment proceedings, Plaintiffs' motion is moot.

IV.   Conclusion.

For the reasons set forth herein:

A.   Target's Motion for Summary Judgment as to Pamela Smith's claims will be DENIED. (Doc. 42.)

B.   Target's Motion for Summary Judgment as to Carrie Pinson's claims will be GRANTED. (Doc. 39.)

C.    Target's Motion for Summary Judgment as to Debra Wilder's claims will be GRANTED.  (Doc. 46.)

D.    Target's Motion for Summary Judgment as to George King's claims will be GRANTED.  (Doc. 36.)

E.    Target's Motion for Summary Judgment as to Latrese McGrew's claims will be GRANTED.  (Doc. 45.)

F.    Target's Motion for Summary Judgment as to Patrick Montgomery's claims will be GRANTED.  (Doc. 51.)

G.    Target's motions to strike the punitive damages claims of plaintiffs Wilder, Montgomery, Pinson, King, and McGrew will be denied as MOOT.  (Docs. 54 - 57, 59.)  Target's motion to strike the punitive damages claims of Pamela Smith will be GRANTED. (Doc. 58.)

H.    Plaintiffs' motion to strike Target's expert report is MOOT.  (Doc. 63.)

So ordered.

Done this <u>27th</u> day of <u>April 2005</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153